DEHOOG, J.
*763 Central Oregon LandWatch (LandWatch) seeks review of a final order of the Land Use Board of Appeals (LUBA) that remands to Crook County its decision granting conditional use approval for a nonfarm dwelling in an exclusive farm use (EFU) zone. LandWatch raises four assignments of error. We reject the first, third, and fourth assignments of error without discussion and write to address only the second assignment of error, in which LandWatch contends that LUBA erred in its interpretation of ORS 215.284(2)(b) and OAR division 660-033 when it directed that if, on remand, the county determines that the subject property is "generally unsuitable for farm use" based on factors other than size and location, the county need not consider whether the subject property could reasonably be put to farm use in conjunction with other lands. On review to determine whether LUBA's order is "unlawful in substance," ORS 197.850(9)(a), we affirm.
The facts, which we take from LUBA's order, are undisputed. As noted, this case relates to the county's decision granting a conditional use approval for a nonfarm dwelling on land in an EFU zone. The parcel of land in question, which has been owned by Lee and Joyce Garcia (the Garcias) since 1995, is 9.32 acres in size and is located in Powell Butte, between the cities of Redmond and Prineville and in one of the more productive agricultural areas in Crook County. However, the land has not historically been used for crops or grazing.
The property sits to the east of an irrigation canal and Powell Butte Road and is covered with juniper and native shrubs. Most of the properties west of the canal and Powell Butte Road are irrigated and used for agriculture. However, like many of the properties east of the canal and Powell Butte Road in that area, the subject property is not irrigated. Furthermore, for the subject property to be irrigated, its owner would have to acquire irrigation rights, and a means of delivering water across Powell Butte Road would need to be devised. The property is made up *764 of soils that "are Class IV if irrigated and Class VI if not irrigated."[1] *1163 There is no dwelling currently located on the land in question. However, in 1979, a prior owner obtained approval for a nonfarm dwelling on the property as a conditional use and installed a septic system on the property. Although a manufactured home was placed on the property, it was later removed for failure to meet the conditions of approval. As noted, the Garcias have owned the land since 1995.
In 2017, the Garcias sought county approval for a nonfarm dwelling on the property. The nonfarm dwelling application was approved by planning staff and, subsequently, by the county planning commission. The county's approval of the nonfarm dwelling was based, in part, on the county's determination that the subject property was generally unsuitable for the production of farm crops or livestock ("generally unsuitable for farm use"). See ORS 215.284 (2)(b).[2] The county, in concluding that the property met that standard, emphasized the property's lack of historical *765 agricultural use, the present lack of irrigation rights and infrastructure needed to irrigate, and the absence of non-irrigated agriculture on adjoining properties. LandWatch challenged the approval in the Crook County Court, which affirmed the county's approval of the nonfarm dwelling. LandWatch then appealed to LUBA.
Before LUBA, LandWatch asserted, in part, that the county's decision that the subject property satisfied the requirements of ORS 215.284(2)(b) was not supported by substantial evidence. Specifically, LandWatch contended that the record and decision failed to demonstrate that the property is "generally unsuitable for farm use considering the factors other than size and location specified in ORS 215.284(2)(b) and OAR 660-033-0130(4)(c)(B)."[3] As relevant to its second assignment of error, LandWatch further asserted to LUBA that the county "misconstrued and misapplied applicable law in finding the subject property cannot be used [for *1164 farm use] in conjunction with other land." Reasoning first that, under ORS 215.284(2)(b) and OAR 660-033-0130(4)(c)(B), a parcel of land cannot be considered unsuitable for farm use solely because of size if it can be put to farm use in conjunction with other land; and, second, that, in its view, the record did not demonstrate that *766 the land was unsuitable for farm use for any reason other than size; LandWatch argued that the county was required to consider whether "the property [could] reasonably be used in conjunction with or managed as part of the surrounding farmland." And, according to LandWatch, the only conclusion that the record supported under that assessment was that the property could be used in that manner. As a result, LandWatch contended, the county's decision that the property was generally unsuitable for farm use was not supported by substantial evidence.
As noted, LUBA remanded the county's decision approving the Garcias' application for a nonfarm dwelling. LUBA agreed with LandWatch's overarching contention that "the county's finding that the subject property is generally unsuitable for farm use is not supported by substantial evidence." In response to LandWatch's specific arguments relating to size and location, however, LUBA first observed that it had sustained LandWatch's first assignment of error on the ground that "the county [had] not established that the subject property is generally unsuitable for farm use based on factors other than size and location." LUBA then explained that
"[o]n remand, if this matter is to be pursued further, [the Garcias] and the county will have another opportunity to demonstrate that the subject property is generally unsuitable for farm use, based on factors other than size and location. If so, * * * the county need not consider size or location and need not consider whether the subject property can be used for farm use in conjunction with other lands. But if size and location must be considered, and therefore are to be the determining factors in establishing that the subject property is generally unsuitable for farm use, then the county must consider whether the subject property 'can reasonably be put to farm * * * use in conjunction with other land[,]' as required by ORS 215.284(2)(b) and OAR 660-033-0130(4)(c)(B)(i)."
(Second brackets in original; footnote omitted.)
On appeal, LandWatch asserts that "LUBA's decision is unlawful in substance because its remand instruction misconstrued and misinterpreted the use in conjunction standard of ORS 215.284(2)(b)." That is, LandWatch *767 contends that LUBA erred in interpreting the statutory requirement that "[a] lot or parcel or portion of a lot or parcel may not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other land." In LandWatch's view, LUBA incorrectly interpreted the use-in-conjunction standard to mean that, if the county determines that the subject property is generally unsuitable for farm use based on factors other than size and location, the county does not need to consider whether the land could be used for farm use in conjunction with other land. The Garcias respond that LUBA's understanding of the statute is correct and consistent with the statute's plain text. We agree with the Garcias that LUBA correctly applied the statute and are unpersuaded by LandWatch's arguments to the contrary.
LandWatch's argument raises the question of what the legislature intended when it directed, in ORS 215.284 (2)(b), that a "lot or parcel or portion of a lot or parcel may not be considered unsuitable [for farm use] solely because of size and location if it can reasonably be put to farm or forest use in conjunction with other land."[4] We analyze that issue using our familiar method of statutory interpretation. See State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (courts determine *1165 legislative intent by examining a statute's text in context and considering legislative history offered by the parties to the extent it may be useful to the analysis).
As set out above, LUBA construed ORS 215.284 (2)(b) to permit the county to pursue either of two decision paths in determining that the subject property was unsuitable for farm use. Under the first path, the county could find the property unsuitable for reasons other than its size or location, including such things as the existing terrain, adverse soil or land conditions, drainage and flooding, and vegetation. See ORS 215.284(2)(b). And, under that path, the county would have no obligation to consider the size and location of the property at all, much less whether *768 those otherwise limiting factors could reasonably be overcome by using the property "in conjunction with other land." See id. However, under LUBA's second path-one in which the "determining factors" in the county's suitability finding were the property's size and location-the county would be required to consider whether the property reasonably could be used in conjunction with other land before finding it unsuitable on those grounds.
In arguing against LUBA's application of ORS 215.284(2)(b), LandWatch appears to contend that LUBA erroneously construed the use-in-conjunction provision in isolation, rather than in its context as Gaines requires. According to LandWatch,
"[t]he use in conjunction standard is a conditional statement that directs the county to: 1) enquire whether the property reasonably can be put to farm or forest use in conjunction with other land; and 2) if the County determines that it can be so used; then 3) refrain from considering the property unsuitable solely because of its size or location."
LandWatch reasons that the "use in conjunction standard is made up of two clauses that are incomplete alone." In LandWatch's view, the statutory prohibition against finding property to be unsuitable "solely because of size or location" only comes into play if a specific condition is satisfied: only if the property "can reasonably be put to farm or forest use in conjunction with other land." From that premise, LandWatch concludes that "local governments must consider whether land can be used in conjunction with other lands * * * before determining whether * * * the land is suitable" for farm use. (Emphasis added.)
There are at least two difficulties with LandWatch's argument. The first difficulty is that LandWatch itself reads the use-in-conjunction provision out of context. In relevant part, ORS 215.284(2)(b) provides for the approval of a nonfarm dwelling in an EFU-zoned area "upon a finding that
"[t]he dwelling is situated upon a lot or parcel that is generally unsuitable for the production of farm crops and livestock or merchantable tree species, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract. A lot or parcel or *769 portion of a lot or parcel may not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other land."
When read naturally from start to finish, the paragraph begins by generally contemplating a finding that land is unsuitable for farm use due to one or more of several listed factors. In the sentence that follows-which is the sentence that LandWatch focuses on-the legislature has imposed a limit on the general terms of the first sentence: a local government may still find land unsuitable for farm uses due to its size or location, but size or location may not be the sole basis for that finding if the land "can reasonably be put to farm or forest use in conjunction with other land." ORS 215.284(2)(b). By reading the second sentence of ORS 215.284(2)(b) as its entry point, LandWatch's interpretation disregards the most natural reading of the statutory text in context, which is that the use-in-conjunction provision is part of an exception to the general terms of the first sentence of the paragraph, and not the statute's central inquiry.
A second difficulty with LandWatch's construction of ORS 215.284(2)(b) is that it would cause us to run afoul of ORS 174.010, which instructs the courts "not to insert what has been omitted" when construing statutes.
*1166 According to LandWatch, a local government must always consider whether property can reasonably be put to farm use in conjunction with other land, whether or not the property's size or location is its limiting factor. But nothing in the text of the statute expressly imposes that affirmative obligation. In fact, even the obligation to consider potential conjoined use when size or location is the limiting factor is only an implicit requirement. That is, the statute does not explicitly direct local governments to consider whether land can reasonably be used in conjunction with other land; it does so indirectly by prohibiting a finding that land is unsuitable for farm use solely due to size or location if conjoined use is possible. In our view, extending that implicit obligation-to consider conjoined use under those limited circumstances-to every instance in which a nonfarm dwelling on EFU-zoned land is contemplated, would stretch the statutory text too far and would effectively insert an affirmative duty on local *770 governments that the legislature has chosen to omit. See ORS 174.010.
Additionally, imposing that affirmative duty could lead to anomalous results. Suppose, for example, a county found that, although drainage or flooding conditions on a subject property precluded its use for farming purposes in isolation, it was possible to alleviate those conditions by using the property in conjunction with other, nearby land. Would that potential use in conjunction with other land preclude a finding that the land was unsuitable for farm use solely due to the drainage or flooding conditions, even though ORS 215.284(2)(b) only prohibits sole reliance on size or location under those circumstances? Would it preclude that finding even if drainage or flooding were not the sole reason? If so, where does any such prohibition come from? And, if not-which, given the text of the statute, appears to be the case-what purpose would it serve under the statute for the county to consider potential conjoined use? We are reluctant to construe ORS 215.284(2)(b) in a manner that would require decision-makers to engage in an inconsequential exercise, especially in the absence of anything to suggest that the legislature intended that result. Thus, for all of the foregoing reasons, we reject LandWatch's text and context based argument that LUBA erroneously construed the use-in-conjunction provision of ORS 215.284(2)(b).[5]
Finally, in addition to its plain text argument, LandWatch contends that LUBA's interpretation of ORS 215.284(2)(b) is inconsistent with at least some of LUBA's own decisions construing the use-in-conjunction "standard." In its order remanding the county's decision, LUBA cited its decision in Epp v. Douglas County , 46 Or. LUBA 480, 485 (2004), in support of its determination that the county did not need to consider whether the subject property could reasonably be used in conjunction with other land if size and location were not the determining factors. According to LandWatch, that conclusion is inconsistent with LUBA's later opinion in Ploeg v. Tillamook County , 50 Or. LUBA 608, 632 (2005). In Ploeg , LUBA discussed Epp and other *771 decisions in which it had read the regulatory version of ORS 215.284(2)(b) to "implicitly absolve counties from the obligation to consider conjoined use where the county does not take size or location into consideration." 50 Or. LUBA at 632 (discussing OAR 660-033-0130(4)(c)(B)(i) ). And, as LandWatch points out, LUBA's opinion in Ploeg goes on to observe that LUBA "now question[ed] whether those cases correctly state the rule." Id.
We note, however, that LandWatch does not advance, much less provide authority to support, the argument that any variation in LUBA's interpretation of the use-in-conjunction provision over the years would render its order unlawful in substance; nor does LandWatch contend that LUBA's prior decisions somehow control our construction of ORS 215.284(2)(b). Thus, even if the order in this case is inconsistent with any of LUBA's earlier decisions-a matter on which we express no opinion-that perceived inconsistency would have no bearing on the outcome here.
As noted, LUBA's order states that,
*1167 "if size and location must be considered, and therefore are to be the determining factors in establishing that the subject property is generally unsuitable for farm use, then the county must consider whether the subject property 'can reasonably be put to farm * * * use in conjunction with other land[,]' as required by ORS 215.284(2)(b) and OAR 660-033-0130(4)(c)(B)(i)."
That requirement, as well as LUBA's explanation that the county need not consider conjoined use if size or location is not the basis of the county's suitability determination, is consistent with our understanding of ORS 215.284(2)(b), as explained above. As a result, LUBA's final order is not "unlawful in substance," and we therefore affirm.
Affirmed.

As defined in Statewide Land Use Planning Goal 3 (Agricultural Lands), agricultural land "in eastern Oregon is land of predominantly Class I, II, III, IV, V and VI soils as identified in the Soil Capability Classification System of the United States Soil Conservation Service[.]"

ORS 215.284(2) provides:
"In counties not described in subsection (1) of this section, a single-family residential dwelling not provided in conjunction with farm use may be established, subject to approval of the governing body or its designee, in any area zoned for exclusive farm use upon a finding that:
"(a) The dwelling or activities associated with the dwelling will not force a significant change in or significantly increase the cost of accepted farming practices or forest practices on nearby lands devoted to farm or forest use;
"(b) The dwelling is situated upon a lot or parcel that is generally unsuitable for the production of farm crops and livestock or merchantable tree species, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract. A lot or parcel or portion of a lot or parcel may not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other land;
"(c) The dwelling will be sited on a lot or parcel created before January 1, 1993;
"(d) The dwelling will not materially alter the stability of the overall land use pattern of the area; and
"(e) The dwelling complies with such other conditions as the governing body or its designee considers necessary."

As LUBA explained, "OAR 660-033-0130(4)(c)(B) sets out the administrative rule's version of the generally unsuitable for farm use standard that applies to counties located outside the Willamette Valley":
"(i) The dwelling, including essential or accessory improvements or structures, is situated upon a lot or parcel, or, in the case of an existing lot or parcel, upon a portion of a lot or parcel, that is generally unsuitable land for the production of farm crops and livestock or merchantable tree species, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract. A lot or parcel or portion of a lot or parcel shall not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other land; and
"(ii) A lot or parcel or portion of a lot or parcel is not 'generally unsuitable' simply because it is too small to be farmed profitably by itself. If a lot or parcel or portion of a lot or parcel can be sold, leased, rented or otherwise managed as a part of a commercial farm or ranch, then the lot or parcel or portion of the lot or parcel is not 'generally unsuitable.' A lot or parcel or portion of a lot or parcel is presumed to be suitable if, in Western Oregon it is composed predominantly of Class I-IV soils or, in Eastern Oregon, it is composed predominantly of Class I-VI soils. Just because a lot or parcel or portion of a lot or parcel is unsuitable for one farm use does not mean it is not suitable for another farm use[.]"

As shown above, the text of OAR 660-033-0130(4)(c)(B)(i) is not materially different from ORS 215.284(2)(b), the statute it implements. Moreover, LUBA's opinion does not purport to distinguish the two, and the parties do not suggest in any way that the rule should be construed differently than the underlying statute. Thus, we focus our discussion on the meaning of ORS 215.284(2)(b).

Neither party provided legislative history that is helpful to our analysis of ORS 215.284(2)(b), nor has our own research disclosed any.